Slip Op. 19-126

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HOME PRODUCTS INTERNATIONAL, INC., <br><br>　　　　　　　　Plaintiff, <br><br>　　　v. <br><br>UNITED STATES, <br><br>　　　　　　　　Defendant. | Before: Leo M. Gordon, Judge <br><br> Consol. Court No. 07-00123 |

**OPINION and ORDER**

[Affirmative injunction to enforce judgment issued.]

Dated: September 27, 2019

　　　Frederick L. Ikenson, Blank Rome LLP of Washington, DC for Plaintiff Home Products International, Inc.

　　　Michael D. Snyder, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant, United States. With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director; and Claudia Burke, Assistant Director. Of counsel was Edward N. Maurer, Deputy Assistant Chief Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs for Border Protection, of New York, NY; and Saad Y. Chalchal, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

　　　William E. Perry, Harris & Moure, PLC of Washington, DC for Defendant-Intervenor Since Hardware (Guangzhou) Co., Ltd.

　　　Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Sarah M. Wyss, and Bryan P. Cenko, Mowry & Grimson of Washington, DC for Target Corp.

　　　Gordon, Judge: This antidumping case was very long and very expensive. Ten years of litigation concluded when the court entered a judgment pursuant to a stipulation of settlement among Plaintiff Home Products International, Inc. ("Home Products"), Defendant United States ("the Government"), and Defendant-Intervenor

Consol. Court No. 07-00123                                                                            Page 2

Since Hardware (Guangzhou) Co., Ltd. ("Since Hardware"). See Judgment in Accordance with Stipulated Settlement, ECF No. 168 ("Judgment"). Several months later U.S. Customs and Border Protection ("Customs") incorrectly liquidated 224 subject entries at a lower dumping rate (9.47 percent) than specified in the Judgment (72.29 percent). See Def.'s Status Report, ECF No. 171. It was a big error, under-collecting millions of dollars on the subject entries. The error was brought to the attention of the Government shortly after the 90-day window expired for Customs to voluntarily reliquidate the subject entries under 19 U.S.C. § 1501. With no other direct statutory authorization to correct the error, the Government sought an order from the court directing Customs to reliquidate those entries in accordance with the Judgment. Id. The court issued a short order directing Customs to reliquidate the subject entries at the correct rate in accordance with the Judgment. See Order for Reliquidation, ECF No. 172 ("Order"). Almost immediately, Target Corporation ("Target"), the importer of record for 40 of the subject entries, sought to contest the lawfulness of any reliquidation of their entries and assert its rights in the finality of liquidation. See Target's Mot. to Intervene, ECF No. 173; Target's Mot. for Reconsideration and to Vacate Court Order, ECF No. 177; see also Home Products' Resp. in Opp'n to Target's Mot. to Intervene, ECF No. 180; Home Products' Resp. in Opp'n to Target's Mot. for Reconsideration, ECF No. 185; Defendant's Resp. in Opp'n to Target's Mot. to Intervene, ECF No. 183; Defendant's Resp. in Opp'n to Target's Mot. for Reconsideration, ECF No. 186.

The court sua sponte stayed any reliquidation of the subject entries pursuant to the Order, and repositioned the posture of the litigation as a motion to enforce the

Case 1:07-cv-00123-LMG   Document 200   Filed 09/27/19   Page 3 of 16

Consol. Court No. 07-00123                                                         Page 3

Judgment by the Government and Plaintiff.[1] See Order Issuing Stay Pending Disposition of Target's Motions, ECF No. 188; see also Home Products' Summary Presentation of Arguments, ECF No. 191; Target Corp.'s Summary Presentation of Arguments, ECF No. 192; Defendant's Summary Presentation of Arguments, ECF No. 193.

## I. Discussion

The Customs Courts Act of 1980 ("1980 Act"), Pub. L. No. 96-417, 94 Stat. 1727 (1980) created "a comprehensive system for judicial review of civil actions arising out of import transactions and federal statutes affecting international trade." Statement of President Carter, 16 Weekly Comp. of Pres. Doc. 2183 (Oct. 11, 1980); see also H.R. Rep. No. 96-1235, at 18–20 (1980), as reprinted in 1980 U.S.C.C.A.N. 3727, 3729. A significant part of this comprehensive new system was the explicit conferral on the U.S. Court of International Trade of "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585 (1982). In possessing remedial powers co-extensive with those of a federal district court, this Court is authorized, with certain exceptions not relevant here, "to order any form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. § 2643(c). The 1980 Act "leaves no doubt that 28 U.S.C. § 2643(c)(1) 'is a general grant of authority for the Court of International Trade to order any form of relief that it deems appropriate under the circumstances.'" United States v. Mizrahie, 9 CIT 142,

---

[1] Defendant-Intervenor Since Hardware has not made filings or participated in any way in the proceedings to enforce the Judgment.

146, 606 F. Supp. 703, 707 (1985) (quoting H.R. Rep. No. 96-1235, at 61, as reprinted in 1980 U.S.C.C.A.N. 3772). As a consequence, Congress empowered the Court of International Trade to adjudicate the rights of parties aggrieved by agency decision-making in the customs and international trade law arena and afford them full and complete relief. See H.R. Rep. No. 96-1235, at 20, 60–62, as reprinted in 1980 U.S.C.C.A.N. 3729, 3771–73.

To provide complete relief a court may, from time to time, be required to enforce its judgments and issue additional declaratory and injunctive relief. See Riggs v. Johnson County, 73 U.S. 166, 187 (1868) (Without the ability to enforce judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."). A supplementary proceeding for a court to enforce a judgment is "summary in nature; [it] cannot be used to take up matters beyond the contours of the judgment and thereby short-circuit the usual adjudicative processes." Harvey v. Johanns, 494 F.3d 237, 244–45 (1st Cir. 2007) (citing Fafel v. Dipaola, 399 F.3d 403, 411 (1st Cir. 2005)). A court's power to enforce a judgment is therefore confined to the four corners of the judgment itself. Id.; see also Peacock v. Thomas, 516 U.S. 349, 359 (1996).

**A. Liquidation**

Liquidation, "the final computation or ascertainment of duties on entries for consumption," is a fundamental concept in all U.S. import transactions. See 19 C.F.R. § 159.1. Optimally, liquidation occurs correctly. If not, reliquidation to correct any resulting error is neither inevitable nor open-ended because Congress long ago adopted a principle

of finality for the liquidation of entries that is now codified primarily in 19 U.S.C. §§ 1514 and 1501 (Customs has 90-day window after liquidation in which to correct errors); see also F. Vitelli & Son v. United States, 250 U.S. 355, 358 (1919) ("the remedy intended to be accomplished by [a prior provision similar to 19 U.S.C. § 1514] was to prevent the right to reliquidate, which had previously been exerted without limit, from being exercised except in the particular conditions stated . . . .").

Liquidation of entries covered by an antidumping or countervailing duty order is somewhat unusual because of the "'retrospective' assessment system under which final liability for antidumping . . . duties is determined after merchandise is imported." 19 C.F.R. § 351.212(a); see 19 U.S.C. § 1675(a)(2). Liability to pay antidumping duties accrues upon entry, see 19 C.F.R. § 141.1(a), but the actual duty is not formally determined until after entry, and not paid until Customs liquidates, possibly many years after entry. Liquidation is suspended during U.S. Department of Commerce ("Commerce") proceedings, see generally American Power Pull Corp. v. United States, 39 CIT ___, ___, 121 F. Supp. 3d 1296, 1300–02 (2015) (explaining statutory scheme for suspension of liquidation), which enables Commerce to exercise its jurisdiction to determine correct assessment rates for subject entries.

If Commerce's proceedings are judicially reviewed, the Court of International Trade then assumes jurisdiction over the subject entries and typically issues a court-ordered injunction that stays liquidation pending issuance of the final court decision (including appeals). See 19 U.S.C. § 1516a(c)(2), American Power Pull, 39 CIT at ___, 121 F.

Supp. 3d at 1302. After the final court decision, the injunction terminates,[2] and Commerce issues instructions to Customs to liquidate the subject entries in accordance with "the final court decision." 19 U.S.C. § 1516a(e). When Customs liquidates an entry, the finality considerations of § 1514 always lurk in the background except when the Court of International Trade takes jurisdiction over the entries in an action under § 1516a. See 19 U.S.C § 1514(b). This is a logical and necessary carve-out from § 1514 because such entries need to be liquidated in accordance with "the final court decision" pursuant to § 1516a(e), meaning the court, not Customs, necessarily has the final say over the entries.

Ideally, things go right, and liquidation occurs correctly, which is true for most entries. Things do, however, occasionally go amiss, and Customs may liquidate entries incorrectly, for example, too early in violation of the (1) statutory suspension of liquidation, see Juice Farms, Inc v. United States, 68 F.3d 1344 (Fed. Cir. 1995); SSAB No. Am. Div. v. U.S. Bureau of Customs & Border Prot., 32 CIT 795, 571 F. Supp. 2d 1347 (2008), or (2) court-ordered injunction, see AK Steel Corp. v. United States, 27 CIT 1382, 281 F. Supp. 2d 1318 (2003); LG Elecs. U.S.A., Inc. v. United States, 21 CIT 1421, 991 F. Supp. 668 (1997). Merely identifying an error, however, is no guarantee the court will order Customs to correct it. Compare Juice Farms, 68 F.3d 1344 (finality of liquidation trumps correct antidumping duty assessment rates); SSAB, 32 CIT at 801, 571 F. Supp. 2d at 1353 (same), and Cemex, S.A. v. United States, 384 F.3d 1314, 1322 (Fed. Cir. 2004)

---

[2] The typical final judgment directs that the subject entries enjoined in the action must be liquidated in accordance with the final court decision, as provided for in Section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e).

(same), with Shinyei Corp. v. United States, 355 F.3d 1297 (Fed. Cir. 2004) (finality of liquidation not a bar to correct assessment rates), AK Steel, 27 CIT 1382, 281 F. Supp. 2d 1318 (finality of liquidation void in violation of injunction against liquidation), and LG Elecs., 21 CIT 1421, 991 F. Supp. 668 (same).

This case involves Customs' error after final judgment. It presents a simple and straightforward issue for the court—whether to enforce its judgment through an affirmative injunction, which the court decides by balancing the proper assessment and collection of antidumping duties with the finality of liquidation. SSAB, 32 CIT at 803, 571 F. Supp. 2d at 1354 ("the court has competing interests to weigh: the proper assessment and collection of antidumping duties vs. the finality of liquidation"). There is an obvious public interest in the proper enforcement of remedial trade statutes through correctly assessed antidumping and countervailing duties. As explained above, there is also a strong and enduring public interest in the stability and predictability of the finality of liquidation. In balancing the equities of the parties, the old maxim that equity aids the vigilant does come into play, and what most likely tips the balance in one direction or the other is how quickly the party with an interest in a judgment moved to assert their rights once they knew or should have known about the error. Cf. SSAB, 32 CIT at 802, 571 F. Supp. 2d at 1354. If they move quickly, the court may correct the error, see AK Steel, LG Elecs., Shinyei; if too much time passes, however, the court will likely let the liquidation stand, see Cemex, SSAB, Juice Farms. This court has previously been guided by the time periods of § 1514 as a suitable benchmark in deciding whether relief should issue. Id. ("That well-known benchmark is a useful guide for both the court and parties to help

resolve the otherwise thorny question of when equity may appropriately intervene to disturb liquidation."). Basically, did the party petition the court within 180 days of the error's actual or constructive revelation? Before turning to that analysis, the court addresses the question of nonparties to the underlying case-in-chief that nonetheless have a direct interest in the Judgment.

### B. Nonparties to the Case-in-Chief with an Interest in the Judgment

Neither Customs nor Target were parties in the underlying litigation. Commerce, not Customs, is the governmental party in trade actions. Customs, however, is nevertheless vitally important on the question of enforcement of the Judgment because any order to enforce the Judgment will be directed specifically at Customs to reliquidate the entries in accordance with the Judgment. Target, as an importer of record, has an obvious direct interest in the court's enforcement of the Judgment because its entries are among the ones that may be reliquidated, and Target, as the importer of record, is therefore best positioned to advocate for the finality of the existing liquidations.

The court has somewhat complex rules for intervention in trade actions under 28 U.S.C. § 2631(j) and USCIT Rule 24, but these are focused on intervention in a case-in-chief, not a supplemental summary proceeding to enforce a judgment. As noted above, the court's inquiry here is focused on the four corners of the Judgment, not the underlying merits of the antidumping proceeding. This is manifestly <u>not</u> an opportunity to go over previously plowed ground. For a summary proceeding to enforce a judgment the court is not concerned about the merits and the requirements of 28 U.S.C. § 2631(j) and USCIT Rule 24 for a party's participation, but instead looks to USCIT Rule 71: "When an order

grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." USCIT R. 71. In this respect Rule 71 implements the court's remedial authority under 28 U.S.C. §§ 1585 and 2643(c)(1). This rule is identical to Federal Rule of Civil Procedure 71, which the court may reference for guidance in the interpretation of its Rule. See USCIT R. 1 ("The court may refer for guidance to the rules of other courts.").

Rule 71 has roots grounded in equity that makes "'manifest common sense.'" 12 Charles A. Wright, et al, Federal Practice & Procedure § 3031 (3d ed. Apr. 2019) (quoting Dobie, The Federal Rules of Civil Procedure, 25 Va. L. Rev. 261, 305 (1939) (explaining history and purpose of Rule 71)). This is particularly true when dealing with a nonparty who was "in active concert or participation with [those] who received actual notice" of the judgment. Id. § 3033; see also Peterson v. Highland Music, Inc., 140 F.3d 1313 (9th Cir. 1998). Considering again the nonparties implicated in this summary proceeding to enforce the Judgment, Customs is always in active participation with Commerce in the liquidation of entries subject to an antidumping duty order. It is a matter of statutory necessity.

Just as the court may reach Customs through Rule 71, the court may also reach Target—a nonparty to the litigation with a substantial interest in the liquidation of the subject entries as an importer of record. There is no question Target should have input on the potential reliquidation of the subject entries, and Rule 71 is the vehicle through which that input is received. Target unfortunately styled its involvement in the litigation as a motion to intervene pursuant to USCIT Rule 24, which the Government and Home

Products vigorously contested. See Home Products' Resp. in Opp'n to Target's Mot. to Intervene; Home Products' Resp. in Opp'n to Target's Mot. for Reconsideration; Defendant's Resp. in Opp'n to Target's Mot. to Intervene; Defendant's Resp. in Opp'n to Target's Mot. for Reconsideration. All that handwringing is for naught, however, because as noted, Rule 24 and 28 U.S.C. § 2631(j) are focused on intervention in a case-in-chief not a supplemental summary proceeding to enforce a judgment, which as Rule 71 wisely contemplates, may implicate various nonparty litigants to the case-in-chief. Here, Target's advocacy for its entries is a necessary and welcome counterpart to the advocacy of the Government and Home Products for the enforcement of the Judgment. It is to that specific advocacy and the balancing of factors to which the court now turns.

### C. Balancing of Factors

Here, the erroneous liquidations occurred in March 2017. Customs, having made the error, had actual knowledge of the error the moment it occurred. This is true even if as a government bureaucracy Customs may have been "unaware" in some abstract sense. Commerce would not have known about the error unless it inquired, and to the court's knowledge, Commerce does not confirm proper liquidation of every entry with Customs. Instead, Commerce relies on private parties to flag errors.

It was Home Products that found the error. As Home Products explains, in August 2017 it learned of a publicly available Customs web portal that required the submission of an importer's importer number to acquire certain entry-specific information. Id. Although importer numbers have been historically non-public, Home Products was able to ascertain numbers for some but not all known ironing table

importers. Home Products used that information to learn that over 200 entries that should have been liquidated at 72.29 percent were in fact liquidated as entered, at 9.47 percent. Id.

Home Products notified Government counsel, who then submitted a status report in October 2017 to the court indicating Customs' readiness to reliquidate at the correct rate should the court issue an appropriate order. Id. Home Products reiterates that it moved diligently and quickly once it learned of Customs' non-compliance with the court's Judgment and maintains that Commerce and Government counsel did the same after Home Products brought Customs' error to their attention. Id.

Target argues that Home Products and Commerce should have known about the error when information about disbursement of funds under the CDSOA was made publicly available in May 2017.[3] According to Target, Home Products and Commerce therefore sat on their rights for over four months before bringing the liquidation issue to the court on October 20, 2017, and that such delay should not be grounds for an injunction requiring

---

[3] In 2000, Congress amended the Tariff Act of 1930 to add Section 754, the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), repealed by the Deficit Reduction Act of 2005, Pub. L. No. 109-171, Title VII, Subtitle F § 7601(a), 120 Stat. 154 (2005), which provided distributions of assessed antidumping and countervailing duties on an annual basis to affected domestic parties ("ADP") for certain qualifying expenditures. 19 U.S.C. § 1675c(a). Home Products was the only ADP that qualified for distributions of antidumping duties assessed on the subject entries in this case. Although Target did not specify what "publicly available information" under the CDSOA should have alerted Home Products to the error in Customs' liquidations, the court surmises that Target is likely referring to Customs' notice of intent to distribute disbursements under the CDSOA available for fiscal year 2017 published in the Federal Register. See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 82 Fed. Reg. 25,052, 25,090 (May 31, 2017).

reliquidation. Id. Target contends that similar to the parties in SSAB the Government and Home Products simply waited far too long to justify equitable relief. Id.

Even assuming Target is correct that Home Products should have known about the liquidation error as early as May 31, 2017, and then notified Commerce (and this is by no means a safe or comfortable assumption), the October 20, 2017 court notice seeking reliquidation was nonetheless made within 180 days of when Target says Home Products should have known about the error. Anything beyond that time period (borrowed from § 1514) would give the court pause, but here, the Government and Home Products were well within it.

On the merits of reliquidation, Home Products adds that every importer of "first review period" ironing tables, including Target, had notice that their imports would be liquidated at 72.29 percent plus interest in the form of Commerce's Federal Register Notice following the Judgment and Commerce's subsequent liquidation instructions issued 18 days thereafter (posted on Custom's website). See Home Products' Summary Presentation of Arguments. Home Products argues that the equities, therefore, cannot possibly favor Target or the other importers who remained silent upon receiving a fortuitous windfall when the erroneous liquidations occurred as entered (at 9.47 percent). Id. The court agrees that the equities do not favor Target. Having presided over the ten years of litigation in this action, the court is likewise reluctant to squander all that collective time, effort, and expense. If Customs' error goes uncorrected, what exactly was the point of this litigation? The court will therefore declare Customs' liquidation of the 224 entries unlawful, and order that each entry be reliquidated in accordance with the Judgment.

The court does need to say a few words about Cemex, S.A. v. United States, 384 F.3d 1314 (Fed. Cir. 2004). Cemex is somewhat similar to this case, involving an erroneous post-judgment liquidation by Customs following lengthy and expensive litigation in the Court of International Trade. Id. at 1314–15. Cemex, like this case, involved a substantial shortfall in collections (some 140 entries with a final assessment rate of 106.846 percent were deemed liquidated "as entered" at the cash deposit rate of 56.94 percent). The U.S. Court of Appeals for the Federal Circuit sustained the Court of International Trade's decision not to correct the erroneous liquidations. This court's preferred reading of Cemex is as a decision to decline to enforce the judgment because too much time had passed following the liquidations, and the domestic interested parties had not been vigilant enough for equity to intervene and disturb the finality of those liquidations. Cemex, 384 F.3d at 1325 ("Ad Hoc should have heeded the repeated warning signs. . . . Ad Hoc should have moved the Court of International Trade to enforce the judgment in 1998, rather than in 2003.").

Cemex can also admittedly be read more broadly as concluding that domestic interested parties simply have no remedy to correct an erroneous Customs' liquidation of subject entries covered by a judgment of the U.S. Court of International Trade. Cemex, 384 F.3d at 1323 ("[W]e agree with the Court of International Trade that Customs' decision to acknowledge that liquidation, deemed or otherwise, had occurred falls within the purview of section 1514(a) and is, therefore, 'final and conclusive upon all persons'— including Ad Hoc."). The court cannot understand the logic or rationale of that reading or result. Keep in mind that Congress enacted a comprehensive trade remedy scheme

designed specifically to benefit domestic interested parties. See generally 19 U.S.C. §§ 1671–1677. The Federal Circuit was apparently persuaded by the Court of International Trade's conclusion that Congress simply failed to provide a remedy in § 1514 for domestic interested parties to correct Customs' errors in trade cases. This unfortunate conclusion confuses § 1514's interrelation with our trade statutes. Section 1514's primary focus is on the rights of importers in customs matters, not trade cases at the Court of International Trade. The fact that domestic interested parties do not enjoy protest rights under § 1514 is neither remarkable nor noteworthy. They never have. What is noteworthy about § 1514 is that Congress specifically carved out trade actions reviewed in the Court of International Trade (under § 1516a) from the purview of § 1514. See 19 U.S.C. § 1514(b). And as explained above, this is a matter of basic logic and common sense because it is the Court of International Trade (and Federal Circuit), not Customs, that has the "final" say about subject entries in trade actions. 19 U.S.C. § 1516a(e). It is therefore difficult to understand the conclusion that Congress—having provided detailed and comprehensive rights for domestic interested parties within the trade remedy statutes—somehow intended that those very parties have no remedy to correct a Customs' error that wipes out years of litigation vindicating those rights. See generally Marbury v. Madison, 5 U.S. 137, 147 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.").

And to further illustrate the problems with a broad reading of Cemex, assume that Customs happens to have a bad month and incorrectly liquidates—at a lower rate—every

<u>single entry</u> subject to judgments in trade actions. Are we to believe that the U.S. Court of International Trade is powerless to enforce those judgments because the domestic interested parties apparently have no remedy to correct Customs' errors? No. As explained above, (1) this Court has the power to enforce its judgments, (2) the principle of finality codified § 1514 is not a bar to correcting Customs' errors in liquidating subject entries covered by trade actions, and (3) whether the court corrects the liquidations and enforces the judgment depends on a weighing of equitable factors in each case. Any interested party (domestic interested parties, foreign respondents, importers, or Commerce), or party with a direct interest in the judgment (<u>i.e.</u>, importers who may not have participated in the subject proceeding for example) may move to enforce such a judgment. They all have an equal right to enforce that judgment. Depending on the error, interests will inevitably diverge, and the court will have to assess the equities on a case-by-case basis to determine whether enforcement of its judgment makes good sense. In this case, as explained above, the court believes that justice requires correction of the erroneously liquidated subject entries.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Target's Motion for leave to File a Reply Brief, ECF No. 184, is granted; it is further

**ORDERED** that the Order, ECF No. 172, is hereby vacated; it is further

Consol. Court No. 07-00123                                                                    Page 16

**ORDERED** that Target's motions to (1) intervene, (2) stay implementation of the Order, and (3) for reconsideration and vacation of the Order, ECF Nos. 173, 176, and 177, are denied as moot; it is further

**ORDERED** that Customs' liquidation of the subject entries was contrary to the final decision in this action reflected in the Judgment, and is therefore unlawful; and it is further

**ORDERED** that Customs shall promptly reliquidate the subject entries in accordance with the Judgment.

                                                        _____/s/ Leo M. Gordon_____
                                                              Judge Leo M. Gordon

Dated: September 27, 2019
       New York, New York